**UNITED STATES of America,
Plaintiff-Appellant,**
v.
**Harry J. TYRRELL, Defendant-Appellee.
No. 14357.**

United States Court of Appeals
Seventh Circuit.
March 18, 1964.

342

Edward R. Phelps, U. S. Atty., Springfield, Ill., Richard E. Eagleton, Asst. U. S. Atty., Peoria, Ill., Louis F. Oberdorfer, Asst. Atty. Gen., Tax Division, Michael K. Cavanaugh, Lee A. Jackson, I. Henry Kutz, Richard W. Perkins, Attorneys, Department of Justice, Washington, D. C., for appellant.

Jack Rauch, Peoria, Ill., for appellee.

Before HASTINGS, Chief Judge, and KNOCH and SWYGERT, Circuit Judges.

HASTINGS, Chief Judge.

This is an appeal by the United States of America from a judgment entered by the district court in favor of taxpayer Harry J. Tyrrell. The trial court dismissed a complaint filed by the Government to reduce to judgment assessments of income tax, penalty and interest for the years 1939, 1940, and 1942 through 1947, inclusive totalling $115,281.32.

The district court found that the complaint was barred by the six-year statute of limitations set out in Section 276(c) of the Internal Revenue Code of 1939.[1]

The assessment in suit for the year 1939 was made on July 23, 1953, and those for subsequent years on July 24, 1953.

On February 27, 1956, taxpayer submitted an offer in compromise in which he agreed, *inter alia*, to the suspension of the statute of limitations while his offer was pending, and for one year thereafter. The Government rejected the offer of compromise on June 12, 1958.

---

1. Internal Revenue Code of 1939:
   "§ 276. Same—Exceptions * * *
   "(c) Collection after assessment. Where the assessment of any income tax imposed by this chapter has been made within the period of limitation properly applicable thereto, such tax may be collected by distraint or by a proceeding in court, but only if begun (1) within six years after the assessment of the tax, or (2) prior to the expiration of any period for collection agreed upon in writing by the Commissioner and the taxpayer before the expiration of such six-year period. The period so agreed upon may be extended by subsequent agreements in writing made before the expiration of the period previously agreed upon." (26 U.S.C.A. 1952 ed., Sec. 276)

The effect of this offer and subsequent rejection was to suspend the running of the statute of limitations from February 27, 1956 through June 12, 1959, both dates inclusive.

The Government filed its complaint on November 8, 1962.

The district court made findings of fact consistent with the foregoing statement and they are not disputed by the parties. We are concerned only with the legal significance of those facts.

The district court held, as contended by taxpayer, "that where a suspension of the statute intervenes, the expiration date of the limitations provision of Section 276(c) must be computed by cumulating the number of elapsed days, in excess of complete years, included within the computation period. In other words, where accumulation of days is a factor, a complaint for collection of taxes must be filed not later than five years and 365 days after the date of assessment, excluding from the computation all periods of time in which the statute was suspended. Applying that formula to this case, the defendant is entitled to judgment as hereinabove found and concluded."

Applying this formula, as it relates to the assessment for 1940 and 1942 through 1947, the district court stated the following conclusions of law.

"9. As it relates to the assessment for 1940 and 1942 to 1947, inclusive, the agreement contained in defendant's compromise offer suspended the running of the statute of limitations from February 27, 1956, to June 12, 1959, both dates inclusive.

"10. Excluding the date of the assessments, two years and 217 days of the limitation period for collection of the assessments for 1940 and 1942 to 1947, inclusive, had elapsed before the offer in compromise was made on February 27, 1956, leaving three years and 148 days of the statutory period unexpired.

"11. Excluding the final day of suspension of the statute, namely June 12, 1959, from the computation, the remaining three years and 148 days of the six-years statutory period expired on November 7, 1962." [2]

Applying the same formula to the assessment for 1939, where it is conceded

2. "Computation of expired time:

"a. From date of assessment, July 24, 1953, to date of offer in compromise, February 27, 1956:

| | |
|---|---|
| July 24, 1953, to and including July 24, 1955 ........ 2 years | |
| July 24 to July 31, 1955 ........................... | 7 days |
| August ............................................ | 31 days |
| September ......................................... | 30 days |
| October ........................................... | 31 days |
| November .......................................... | 30 days |
| December .......................................... | 31 days |
| January 1956 ...................................... | 31 days |
| February, to date of offer ........................ | 26 days |
| Total expired time: ........................ 2 years | 217 days |

"b. From final day of suspension of the statute, June 12, 1959, to November 8, 1962, the date of filing of complaint:

| | |
|---|---|
| June 12, 1959 to and including June 12, 1962 ........ 3 years | |
| June 12 to June 30, 1962 ........................... | 18 days |
| July .............................................. | 31 days |
| August ............................................ | 31 days |
| September ......................................... | 30 days |
| October ........................................... | 31 days |
| November .......................................... | 8 days |
| Total expired time: ........................ 3 years | 149 days |

"c. Total expired time, period a plus period b .......... 6 years & 1 day."

the statute began to run one day earlier (July 24, 1953) than for the subsequent years, the district court concluded that 6 years and 2 days had expired, and held the complaint barred as to that year.

In the trial below, the only contention made by the Government was that the "months-days" method of computation of the six-year period, when the period is interrupted or "broken" by a suspension resulting from the submission of an offer in compromise, is a rational method and consistent with the statutory language.

The "months-days" method preferred by the Government would treat a year as consisting of 11 full months and 30 days. Applying this formula to the years 1940 and 1942 through 1947, the Government arrives at a total expired time of 5 years, 11 months and 29 days, or one day short of the six-year limitation period.[3]

Applying the same formula to the year 1939, the Government filed its complaint on the last day of the limitation period.

The trial court, in its memorandum opinion, concluded that the "actual days" method of computation was the correct method and in harmony with an unequivocal statutory provision. It felt the Congress intended by the provisions of § 276(c) to mean a calendar year of 365 days (366 days in leap year). It pointed

out that the "fallacy of the government's argument is that it assumes that months are uniform in length, whereas, in fact, the months of the year vary from 28, or 29 days, to 31 days in length. It is one thing to say that twelve months which follow each the other in their chronological sequence equal one year and quite another to say that twelve months taken, not in sequence, but, by factual happenstance, out of two or more years equal one year."

On appeal, the Government, with commendable candor, concedes "there is nothing inherently irrational in the method of computation followed by the District Court." It adds that were "this problem being presented as an abstract proposition for the first time, the Internal Revenue Service could abide by any rational method of computation."

The Government further admits that an examination of the legislative history of § 276(c) of the 1939 Code, its predecessor sections and the corresponding § 6502 (a) of the 1954 Code sheds no light on the precise question presented by this case.

Further, the Government admits there is no decided case where this question was in issue. Each party has cited cases where either the "actual days" or the

---

3. Government's computation of expired time:
     (a) From date of assessment, July 24, 1953, to date of offer in compromise, February 27, 1956.

| | | |
|---|---|---|
| July 25, 1953 through July 24, 1955 ..............2 years | | |
| July 25, 1955 through February 24, 1956 .......... | 7 months | |
| February 25 to date of offer, February 27, 1956 .... | | 2 days |

     (b) From final day of suspension of statute, June 12, 1959 to November 8, the date of filing of complaint.

| | | |
|---|---|---|
| June 13, 1959 through June 12, 1962 ............3 years | | |
| June 13, 1962 through October 12, 1962 .......... | 4 months | |
| October 13, 1962 to date of complaint, November 8, 1962 ...................................... | | 27 days |

              Total time expired: 5 years 11 months 29 days (period a plus period b)

In its brief the Government notes that, "In this and all subsequent Government computations, the first day upon which the statute begins to run is given as the starting point and is designated as the first day of the computation. The District Judge started his computations on the day prior to the date on which the statute begins to run, but excluded the first day he names from his computation. Thus, while there is a difference in style between the Government and the District Judge as to how the computation should be phrased, there is no disagreement as to when the period starts running."

"months-days" method was used without the correctness of either method being questioned by the parties or the courts.

■ On this basis, which was the presentation made to the district court in the trial of this case, we cannot say that the trial court erred in its conclusion. There is no ground for reversal on the record below.

However, for the first time on this appeal, the Government seeks reversal on a new and different ground not advanced in the trial of the case.

It now argues that while conceding the "actual days" method adopted by the district court is a rational solution to the problem, it "does not achieve any scientific precision, and would require the abandonment of a long established administrative practice of the Internal Revenue Service, with the consequent duplication of effort necessary to make several thousand recomputations in similar cases." It states that the "months-days" method was used by the Internal Revenue Service in over 25,000 cases in the five fiscal years ending June 30, 1962.

On this factual argument, it is sufficient to say that the record below is entirely devoid of any showing of this character. No proof or argument was made concerning the administrative practice or the extent of its use.

As a legal proposition on appeal, the Government then contends that "when the Internal Revenue Service has adopted a national administrative practice which is a fair interpretation of congressional intent in the solution of problems upon which the Internal Revenue Code does not speak precisely, this practice should be given considerable weight by the courts, and should not be overturned, especially where, as in this case, no weighty countervailing considerations exist," citing cases.

Again, we point out that this issue was not raised in the district court by the pleadings, the proof or in argument to that court. This is not denied by the Government. They argue that there is enough in the decided cases on other issues to enable us to take judicial notice of the existence and prevalence of such an administrative practice. We disagree.

■■ It is a well-settled general rule in all jurisdictions that, absent a jurisdictional question, issues not raised at trial cannot be presented for the first time on appeal. A trial court should not be reversed on grounds that were never urged or argued below. Dec. Dig., Appeal and Error, § 169.

■ At the same time, we recognize that courts of appeal have the power in exceptional cases and in the interest of justice to consider questions of error not raised in the trial court. Hormel v. Helvering, 312 U.S. 552, 557, 61 S.Ct. 719, 85 L.Ed. 1037 (1941); Ketler v. Commissioner of Internal Revenue, 7 Cir., 196 F.2d 822, 827 (1952).

■ We do not consider this to be such an exceptional case. To hold otherwise would open wide the gates to all unsuccessful litigants to urge reversals or remands for the consideration of new issues coming as afterthoughts on appeal. In the instant appeal, the trial court would be required to reopen the case to permit the Government for the first time to introduce evidence in support of its claim of a long established administrative practice rising to the dignity of law.

For these reasons, we do not pass upon this belated contention urged by the Government.

Under these circumstances, we limit this holding to the facts of this case. We express no opinion on the effect of administrative practice, as a matter of law, on the precise question before us.

The judgment of the district court is affirmed.

Affirmed.