**Louis Richard HERNANDEZ, Plaintiff–Appellant,**

**v.**

**Fernando CEPEDA, Joseph Annerino, and Patrick Mokry, Defendants–Appellees.**

No. 86–2829.

United States Court of Appeals, Seventh Circuit.

Argued Feb. 25, 1988.

Decided Oct. 14, 1988.

Michael W. Davis, Sidley & Austin, Chicago, Ill., for plaintiff-appellant.

Jeffrey P. Smith, Asst. Corp. Counsel, Chicago, Ill., for Annerino and Mokry.

Karen J. Dimond, Asst. States' Atty., Chicago, Ill., for Cepeda.

Before CUDAHY, FLAUM and EASTERBROOK, Circuit Judges.

FLAUM, Circuit Judge.

Louis Richard Hernandez filed a complaint in federal district court pursuant to 42 U.S.C. §§ 1983 and 1988, alleging that Deputy Sheriff Fernando Cepeda and Chicago Police Officers Joseph Annerino and Patrick Mokry violated his civil rights by using excessive force to arrest him, and that they wantonly and willfully deprived him of medical attention for an extended period of time following his arrest.[1] The jury found in favor of the defendants on all claims. Hernandez appeals, contending that the district court erred in admitting

evidence that the charges that led to his arrest were rape and aggravated kidnapping. This evidence was admitted under Federal Rule of Evidence 404(b) for the purpose of showing Hernandez's motive to resist arrest. Hernandez further claims that the court erred in admitting evidence of the fact that he was subsequently convicted of rape and aggravated kidnapping to impeach his credibility pursuant to Federal Rule of Evidence 609(a). Finally, Hernandez argues that even if the evidence of his subsequent convictions was properly admitted, the defendants' misuse of this evidence necessitates a new trial. We hold that the evidence of the charges on which Hernandez was arrested as well as the evidence of his subsequent rape and kidnapping convictions was properly admitted. We further hold that Hernandez waived the issue of the proper use of the Rule 609(a) conviction evidence. We therefore affirm.

I.

The facts underlying the alleged civil rights violations are of minimal importance to the resolution of this appeal; therefore it will suffice to summarize them briefly. On August 18, 1982, Hernandez was arrested in Chicago by Officers Mokry and Annerino on charges of rape and aggravated kidnapping. Approximately one month after his arrest, Hernandez posted a $1,500 bond and was released on bail pending trial. Subsequently, in violation of the terms of his bail, Hernandez left Illinois and moved to Texas. Although Hernandez returned to Illinois in September, 1983, he did not surrender to the authorities.

On December 23, 1983, Hernandez visited some friends at the home of Sylvia Ybarra. During a routine patrol, Officers Annerino and Mokry saw Hernandez's car in the area and decided to investigate. At approximately 2:30 p.m. Deputy Sheriff Cepeda and Officer Annerino knocked on

---

1. Defendant Cepeda moved for a directed verdict at the close of the plaintiff's case. This motion was granted on the excessive use of force claim, but denied as to the claim of deprivation of medical care. Neither claim was dismissed against defendants Annerino and Mokry. On appeal, the plaintiff does not challenge the directed verdict in favor of Cepeda on the excessive use of force claim.

Sylvia Ybarra's door and asked if Hernandez was present. They were admitted into the apartment, while Officer Mokry entered through the back door. Hernandez identified himself to Cepeda, who informed him that the officers had a warrant for his arrest.

The parties contest what happened next. Hernandez testified that there was a struggle during which he was repeatedly pushed and hit. Eventually, Hernandez was handcuffed and taken outside to the officers' car. According to Hernandez, Annerino hit him several times, both before they reached the car and after he was placed in the backseat. Hernandez also asserts that Annerino kicked him, causing him to trip and fall on the sidewalk, resulting in a serious injury to his arm.

Hernandez further contends that in the hours following his arrest he told all three defendants that he was injured and repeatedly asked for medical attention, requests that the defendants denied. Hernandez also claims that the defendants threatened him with further injury if he mentioned anything that had happened during the arrest. That evening Cepeda took Hernandez to Cermak Hospital; he was later admitted to Cook County Hospital with a severe fracture of his arm. The injury required surgery to place several rods in the broken bone. Hernandez was hospitalized for several months after the surgery; he was eventually released and then readmitted for further surgery to remove the rods.

Before trial, Hernandez filed a motion in limine seeking to exclude any evidence relating to the specific charges (rape and aggravated kidnapping) that led to his arrest on December 23, 1983.[2] Hernandez also sought to exclude the fact that he was subsequently convicted of rape and aggravated kidnapping. The district court denied Hernandez's motion. The court reasoned that the evidence regarding the specific charges on which Hernandez was arrested was admissible under Federal Rule of Evidence 404(b) to show Hernandez's motive to resist arrest. The court also held that Hernandez's motive was relevant under Federal Rule of Evidence 401 because it tended to make more probable the defendants' contention that Hernandez resisted arrest and that any force they used in arresting him was a necessary response to his recalcitrance. The district court further held that the evidence that Hernandez was eventually convicted of rape and aggravated kidnapping was admissible under Federal Rule of Evidence 609(a) to impeach his credibility. The district judge engaged in a balancing test and concluded that the probative value of this evidence outweighed its prejudicial effect, particularly because the jury would already have the most damaging aspect of this information in front of it under Rule 404(b)—the charges on which Hernandez was arrested.

## II.

### A.

■ On appeal, Hernandez's first argument is that the district court erred when it admitted evidence of his rape and kidnapping convictions under Federal Rule of Evidence 609(a). Rule 609(a) provides that:

> For the purpose of attacking the credibility of a witness, evidence that the witness has been convicted of a crime *shall* be admitted ... if the crime (1) was punishable by death or imprisonment in excess of one year under the law under which the witness was convicted, and the court determines that the probative value of admitting this evidence outweighs its prejudicial effect *to the defendant.* ...

(Emphasis added). Hernandez argues that the district judge erred in concluding that the evidence of his rape and kidnapping convictions was not more prejudicial than probative under the balancing test of Rule 609(a). Hernandez contends that this evidence was particularly prejudicial because it tended to inflame the jury's emotions. Moreover, Hernandez asserts, this evidence

---

**2.** Although Hernandez was also arrested on charges of bailjumping, he did not challenge the admissibility of that evidence, nor did he contest the admissibility of the fact that he subsequently pled guilty to the bail-jumping charges.

was of limited probative value because unlike a prior perjury conviction, a prior rape or kidnapping conviction does not directly implicate a witness's credibility. Hernandez thus contends that at most defense counsel should have been permitted to inform the jury that he was a convicted felon, without specifying the nature of the crime. According to Hernandez, defense counsel improperly used his rape and kidnapping convictions to convince the jury that, irrespective of what may have happened during his arrest, Hernandez is not the type of person who is deserving of civil rights protection.

Subsequent to Hernandez's filing of his brief on appeal we decided the question of the admissibility of prior convictions in civil trials under Rule 609(a). *Campbell v. Greer,* 831 F.2d 700 (7th Cir.1987). *Cf. Brown v. Flury,* 848 F.2d 158 (11th Cir. 1988) (discussing the split in the circuits on the admissibility of prior conviction evidence, the application of the Rule 609(a) balancing test in civil cases, and the effect of Rule 403 on the admissibility of prior conviction evidence). In *Campbell* we held that, except as to defendants in criminal cases, prior convictions that meet the requirements of Rule 609(a) are always admissible to impeach a witness without balancing the prejudicial effect of the conviction against its probative value. 831 F.2d at 703–04. Examining the language of the Rule and its legislative history, we concluded that "[t]he only prejudicial effect that the judge is to consider in ruling on the admissibility of a prior conviction is the prejudicial effect on the defendant in a criminal trial; as to all other witnesses, prior convictions are admissible for pur-

poses of impeachment without any balancing test." *Id.* at 704 (citations omitted). Based on our decision in *Campbell,* we hold that the district court properly admitted the evidence of Hernandez's rape and kidnapping convictions without regard to the balance between its prejudicial effect and its probative value.

As did the plaintiff in *Campbell,* Hernandez contends that even if the evidence of his convictions was admissible under Rule 609(a), it should have been excluded under the separate balancing test of Federal Rule of Evidence 403.[3] In *Campbell,* however, we held that Rule 403 "has no application to the use of convictions to impeach a witness's testimony in either a criminal or a civil case." *Id.* at 706. "[W]here, as in Rule 609(a), Congress has taken pains to specify the conditions for both the admission and the exclusion of a specific class of evidence (convictions), district courts may not use Rule 403 to set that specification at naught." *Id.* (citations omitted). We therefore hold that the district court did not err when it refused to exclude the evidence of Hernandez's prior convictions under Rule 403.

Finally, Hernandez argues that the jury should not have been informed about the nature of his subsequent convictions—rape and kidnapping. We rejected this same argument in *Campbell,* which also involved a prior rape conviction. *Id.* at 707 ("[t]here is no precedent for withholding the identity of the felony from the jury when using a conviction to impeach a witness's testimony, and we are not minded to create one."). The jury was properly informed that Hernandez's convictions were on charges of rape and kidnapping.[4]

3. Federal Rule of Evidence 403 provides that: Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

4. Hernandez also challenged the district court's failure to give one of his proposed jury instructions. The proposed instruction provided:
In this case you are to determine whether the defendants, or any of them, violated the plain-

tiff's civil rights. Whether the plaintiff was guilty of a crime at the time of the occurrences testified to in this proceeding is *entirely irrelevant and is not to be considered by you in any way* in reaching your verdict in this case. (Emphasis added). This instruction is not an accurate statement of the law. Hernandez's convictions were properly admitted, were not entirely irrelevant, and could be considered by the jury for their impeachment value. The district court therefore did not err in refusing to give this proposed instruction.

## B.

■ Although in *Campbell* we concluded that any witness in a civil trial may be impeached by evidence that he or she has been convicted of a crime punishable by death or more than one year's imprisonment without regard to the prejudicial effect or probative value of this evidence, we placed strict limits on its use. These limitations are designed to ensure that evidence of a prior conviction is not used to impermissibly shift the focus of the trial to the witness's past conduct. Thus, the opposing party may not "harp on the witness's crime, parade it lovingly before the jury in all its gruesome details, and thereby shift the focus of attention from the events at issue in the present case to the witness's conviction in a previous case." *Id.* Essentially all that the cross-examiner may elicit about the prior conviction is "the crime charged, the date, and the disposition."

Although the boundaries we set in *Campbell* for the use of Rule 609(a) conviction evidence may have been exceeded in the present case, the plaintiff waived this issue by failing to raise it before the district court.[5] In general, if a party fails to raise an issue before the district court, the issue is not preserved for appeal.[6] *See, e.g., Walsh v. Mellas*, 837 F.2d 789, 799–800 (7th Cir.), *cert. denied*, —— U.S. ——, 108 S.Ct. 2832, 100 L.Ed.2d 933 (1988) (collecting cases). Once the district court ruled that the evidence of Hernandez's convictions was admissible under Rule 609(a), Hernandez made no further objections to either its admission, or to the defendants' alleged misuse of this evidence. By failing to object to the defendants' continued harping on the Rule 609(a) conviction evidence, Hernandez waived this issue for appeal.

In the criminal context, errors that are not raised before the district court can nevertheless be considered on appeal under the plain error doctrine. Although we have never decided whether this doctrine is applicable in civil cases, we have recently expressed doubt that this doctrine is appropriate in the civil context. *In re Muller*, 851 F.2d 916, 918 (7th Cir.1988). "If invocable at all, '[o]nly in most exceptional circumstances we will allow a civil appellant

---

**5.** Although the defendants did not elicit the details of the rape and kidnapping themselves, they did harp on the convictions and elicited much more than the crime charged, date, and disposition. On cross-examination defense counsel questioned Hernandez extensively about his prior convictions, where the crimes occurred, and the sentences he received for each crime. Counsel also sought information regarding the convictions and sentences of Hernandez's co-defendants. Moreover, counsel raised the convictions with virtually every witness who testified at the trial, and even questioned defendant Mokry about his testimony at Hernandez's criminal trial. In closing argument, for example, counsel for Annerino and Mokry referred to Hernandez as "the criminal sitting over there," "the violator of peoples' civil rights," and "the convicted rapist," and mentioned at least a dozen times that Hernandez had been convicted of rape and kidnapping. Further, counsel argued that:

> Certainly Louis Hernandez is the kind of person that appreciates civil rights. I mean, after all, it's Louis Hernandez' fastidious concern for peoples' civil rights that makes him what he is today, a convicted rapist, a convicted kidnapper and a convicted bailjumper and the man, who, when he walks out of her[e] is going back to the penitentiary. If he goes back with any money whatsoever, he is going to have a real big smile on his face....

This type of emphasis on the plaintiff's convictions runs the risk of changing the focus of the trial from the alleged civil rights violations at issue to the plaintiff's criminal record. While the jury could consider Hernandez's convictions for impeachment purposes under Rule 609(b), it appears that the defendants impermissibly tried to use this evidence in an effort to inflame the jury's emotions against Hernandez. We strongly admonish counsel to refrain from this type of improper use of Rule 609(a) conviction evidence in the future. Had Hernandez preserved this issue for appeal, our decision in *Campbell* might well compel a reversal of this case.

**6.** There are limited exceptions to this waiver rule. Thus, for example, an issue may be raised for the first time on appeal if "'the issue presented goes to the district court's subject-matter jurisdiction, if the district court's decision is "plain error," ... or if there are exceptional circumstances where justice demands more flexibility.'" *Walsh v. Mellas*, 837 F.2d 789, 800 (7th Cir.), *cert. denied*, —— U.S. ——, 108 S.Ct. 2832, 100 L.Ed.2d 933 (1988) (quoting *Johnson v. Artim Transp. Sys., Inc.*, 826 F.2d 538, 548 (7th Cir.1987), *cert. denied*, —— U.S. ——, 108 S.Ct. 1998, 100 L.Ed.2d 229 (1988)). None of these exceptions is applicable in the present case.

to make a nonjurisdictional argument for the first time on appeal....'" *Id.* (quoting *Walker v. Maccabees Mut. Life Ins. Co.*, 753 F.2d 599, 602 (7th Cir.1985)). We need not decide this question in the present case because, in any event, this is not the type of exceptional civil case that would justify the invocation of the plain error doctrine.

### III.

Hernandez's second argument on appeal is that the district court erred in admitting evidence that he was being arrested on charges of rape and aggravated kidnapping at the time of the alleged civil rights violations. The district court admitted this evidence under Federal Rule of Evidence 404(b) [7] for the purpose of showing Hernandez's motive to resist arrest. The court also concluded that Hernandez's motive was relevant under Federal Rule of Evidence 401 [8] because it would tend to make more probable the defendants' testimony that Hernandez did in fact resist arrest, thereby justifying the use of some additional force.

We agree with the district court that the evidence of the charges on which Hernandez was arrested at the time of the alleged civil rights violation was admissible for the purpose of demonstrating Hernandez's motive to resist arrest. Proof of motive is a proper use of this type of evidence under Rule 404(b). We further conclude that Hernandez's motive to resist arrest was relevant under Rule 401 because it would tend to make the defendants' testimony that Hernandez did resist arrest more probable than it would be without that evidence.

Hernandez, however, argues that the district court erred in admitting this evidence to show motive because the court failed to balance the prejudicial effect of this evidence against its probative value.

*See* Fed.R.Evid. 403. The plaintiff correctly points out that the district court did not make any explicit findings regarding the probative value and potential prejudicial effect of this evidence. Such a balance is a necessary element for the admissibility of this evidence under Rule 404(b). *United States v. Shackleford*, 738 F.2d 776, 779 (7th Cir.1984).

> The district court must both identify the exception that applies to the evidence in question [Rule 404(b)] and evaluate whether the evidence, although relevant and within the exception, is sufficiently probative to make tolerable the risk that jurors will act on the basis of emotion or an inference via the blackening of the defendant's character.

*United States v. Beasley*, 809 F.2d 1273, 1279 (7th Cir.1987).

Hernandez, however, did not object to the district court's failure to balance the prejudicial effect of this evidence against its probative value when the court ruled on its admissibility. Hernandez also did not object to the admission of this evidence during the trial on the ground that it was more prejudicial than probative. As a result, Hernandez has waived the issue of the court's failure to explicitly balance the probative value of this evidence against its potential prejudice under Rule 404(b). *Walsh v. Mellas*, 837 F.2d 789, 799–800 (7th Cir.), *cert. denied*, — U.S. ——, 108 S.Ct. 2832, 100 L.Ed.2d 933 (1988). In the future, however, we encourage district courts to explicitly acknowledge the balancing process when admitting evidence under Rule 404(b). Although a district court's decision to admit or exclude evidence is reviewable only for an abuse of discretion, we cannot make that determination where *the court's exercise of its discretion is not apparent from the record.* In some circum-

---

7. Federal Rule of Evidence 404(b) provides:
   Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of *motive,* opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

(Emphasis added).

8. Federal Rule of Evidence 401 provides:
   "Relevant evidence" means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.

stances, the failure to exercise discretion may itself be an abuse of discretion.

## IV.

We hold that the district court properly admitted the evidence of Hernandez's rape and aggravated kidnapping convictions under Rule 609(a). This evidence should have been admitted solely for the purpose of impeaching Hernandez's testimony. Although the defendants may have exceeded the scope of the proper use of this evidence established in *Campbell*, Hernandez failed to object at trial to the defendants' misuse of this evidence and thus, the issue is waived on appeal.

We also hold that the evidence of the charges on which Hernandez was being arrested at the time of the alleged civil rights violations was admissible under Rule 404(b) to demonstrate his motive to resist arrest. We further conclude that Hernandez's motive was relevant under Rule 401 because it would tend to make the defendants' testimony—that Hernandez did in fact resist arrest—more probable than it would be without this evidence. Although the district court failed to explicitly balance the probative value of this evidence against its possible prejudicial effect, Hernandez did not object and thereby failed to preserve this issue for appeal. The judgment of the district court is therefore AFFIRMED.

CUDAHY, Circuit Judge, concurring:

I join the majority opinion and write separately only to express my view of the extremely troubling "harping" issue. The rule of *Campbell v. Greer*, 831 F.2d 700 (7th Cir.1987), is stringent enough without permitting its own announced limitations to be flagrantly violated. Although, as the majority notes, *Campbell* sternly forbids tactics which "shift the focus of attention from the events at issue in the present case to the witness's conviction[s] in a previous case," *Campbell*, 831 F.2d at 707, footnote 5 of the majority opinion describes defense tactics which seem to relentlessly pursue precisely such a shift.

Of course, the requirement that objections be raised first in the trial court is basic to the process of appellate review. But it is certainly arguable that plaintiff's counsel raised this issue as promptly as possible (in his reply brief) after *Campbell* and its "harping" caveat came down. Thus this case might present a recognized exception to the waiver rule of *Walsh v. Mellas*, 837 F.2d 789 (7th Cir.), *cert. denied*, —— U.S. ——, 108 S.Ct. 2832, 100 L.Ed.2d 933 (1988). Under the *Walsh* exceptions there may be in the case before us "exceptional circumstances where justice demands more flexibility." *Walsh*, 837 F.2d at 800; *see also Johnson v. Artim Transp. System, Inc.*, 826 F.2d 538, 548 (7th Cir.1987), *cert. denied*, —— U.S. ——, 108 S.Ct. 1998, 100 L.Ed.2d 229 (1988).[1]

However, in this case the trial record reveals that despite egregious "harping" during the trial, counsel never raised a single objection on this issue. Thus, although the point may be a far fetch, I think

1. The "flexibility" exception traces its genealogy back through a long line of Seventh Circuit cases, *Walsh*, 837 F.2d at 800 (quoting *Johnson*, 826 F.2d at 548 (quoting *Zbaraz v. Hartigan*, 763 F.2d 1532, 1544 (7th Cir.1985), *cert. denied*, —— U.S. ——, 108 S.Ct. 479, 98 L.Ed.2d 478 (1987) (quoting *Stern v. United States Gypsum Co.*, 547 F.2d 1329, 1333–34 (7th Cir.), *cert. denied*, 434 U.S. 975, 98 S.Ct. 533, 54 L.Ed.2d 467 (1977) (quoting *Federal Savings and Loan Insurance Corp. v. Quinn*, 419 F.2d 1014, 1019 (7th Cir. 1969) (quoting *United States v. Tyrrell*, 329 F.2d 341, 345 (7th Cir.1964) (quoting *Ketler v. Commissioner of Internal Revenue*, 196 F.2d 822, 827 (7th Cir.1952) (quoting *Hormel v. Helvering*, 312 U.S. 552, 557, 61 S.Ct. 719, 721, 85 L.Ed. 1037 (1941)))))))), to a Supreme Court case in which Justice Black wrote:

Rules of practice and procedure are devised to promote the ends of justice, not to defeat them. A rigid and undeviating judicially declared practice under which courts of review would invariably and under all circumstances decline to consider all questions which had not previously been specifically urged would be out of harmony with this policy. Orderly rules of procedure do not require sacrifice of the rules of fundamental justice.

312 U.S. at 557, 61 S.Ct. at 721. This is perhaps a timely reminder in times when the pressures of increasing dockets raise the incentives for finding procedural grounds for dismissal of claims.

trial counsel might have been alerted to object to this development as such during the trial, even though evidence of the prior convictions had been admitted over his objection. Even without Judge Posner's opinion in *Campbell,* trial counsel might have perceived that flagrant and repetitive reliance on the prior convictions was a matter going beyond their essential admissibility. For this reason, I think the result here may not be as unjust as it would otherwise appear. Nevertheless, it remains a close call, given that the standard under which the trial attorney could have objected was not announced until after trial. Thus our result depends upon the egregious character of the error at trial, its clearly objectionable nature even under the rule at the time of the trial and the total absence of any objection on point by the trial attorney. Without these features, a change in the law after trial would constitute an "exceptional circumstance" demanding flexibility in the interests of justice. To hold otherwise would be to require trial attorneys to be seers as well as advocates, an unfortunate result.